1   MELINDA HAAG (CABN 132612)
    United States Attorney
2
    J. DOUGLAS WILSON (DCBN 412811)
3   Deputy Chief, Criminal Division

4   GARTH HIRE (CABN 187330)
    CHRISTINA McCALL (CABN 234139)
5   Assistant United States Attorneys

6      1301 Clay Street, Suite 340S
       Oakland, California 94612-5217
7      Telephone:  (510) 637-3929/ 3717
       Facsimile:  (510) 637-3724
8      E-Mail:     Garth.Hire@usdoj.gov
                   Christina.McCall@usdoj.gov
9
    Attorneys for Plaintiff
10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                    OAKLAND DIVISION

14   UNITED STATES OF AMERICA,        )   No. CR 09-0203 CW
                                      )
15          Plaintiff,                )   UNITED STATES' SECOND
                                      )   SUPPLEMENTAL SENTENCING
16   v.                               )   MEMORANDUM
                                      )
17   DESEAN NATHANIEL GARDNER,        )   Hearing Date:    October 5, 2011
                                      )   Hearing Time:    2:00 p.m.
18          Defendant.                )
                                      )
19   ─────────────────────────────────)

20

21

22

23

24

25

26

27

28

# I.

## DEFENDANT'S STATEMENTS TO THE USPO

During his interview the United States Probation Office, defendant Desean Nathaniel Gardner (defendant) was specifically asked about intercepted conversations between himself and a realtor regarding the attempted purchase of a home for $150,000.  The PSR states that:

> defendant stated that his father's friend, "Burn," last name unknown, whom he has known since he was five years old, told him to find a home, he would purchase it, and the defendant could live there. According to the defendant "Burn" suffered a work-related injury and received a settlement, and told the defendant to look for a home not more than $150,000.

As set forth below, these statements were patently false.

# II.

## DECLARATION OF VICKI SMOTHERS

At 11:29 a.m. the day before sentencing, defendant filed a declaration from Vicki Smothers. In it, Ms. Smothers claims that a man named Vernis James, who goes by the name "Burn," settled a worker's compensation for about 1.6 million dollars.  Ms. Smothers went on to claim that Mr. James believes that East Palo Alto was a bad environment for defendant and wanted to help defendant relocate (recall that defendant already lived in San Jose and only went to East Palo to sell drugs, collect drug proceeds and threaten people with firearms) by buying a home for defendant that Desean could live in.  Ms. Smothers claims, without laying any foundation for how she knew this information, that Mr. James limited the purchase price to $150,000.  The government has now learned – from Mr. James himself – that the information provided by defendant and Ms. Smothers is not remotely accurate.

### III.

### INTERVIEW OF VERNIS JAMES

After receiving the declaration of Ms. Smothers and learning the true identity of "Burn," the government located him and interviewed him.  Far from promising to buy the defendant a home for $150,000 (in fact, Mr. James said that would not make sense), Mr. James told officers from the Menlo Park Police Department that after defendant was shot at he offered to loan defendant $3,000 to $3,500 for first and last months rent so that he could get an apartment out of the area (again, defendant already had an apartment in San Jose).  Mr. James also said that his settlement was for $1,180,000 and that the lawyers took forty percent of that amount.  Mr. James also confirmed his telephone number.  This interview was audio recorded and provided to the defense.

### IV.

### INTERCEPTED CALL BETWEEN DEFENDANT AND VERNIS JAMES

After confirming Mr. James' telephone number, the government located one intercepted call between defendant and Mr. James as set forth below.  On February 16, 2009, at 5:41 p.m., a call was intercepted between Gardner using (707) 704-8460 and Vernis James (Session 2447):

James:      Hello.

Gardner:    Hello, what's up uhh . . . this Burn?

James:      Huh?

Gardner:    This Burn?

James:      Yeah.

Gardner:    What's up?  This Desean.

James:      Ay what's up?

Gardner:    Nothing, shit, was trying to see whenever, umm, I can come rap about that I was telling my, umm, my dad done talked to you about.  Cause I mean . . . you, you know what I am talking about?

James:      Well, I'll be down there Thursday, I'll be down that way Thursday, alright?

Gardner:    Alright.

| | | |
|---|---|---|
| 1 | James: | Get my rims put on my car.  I'll be down that way Thursday alright? |
| 2 | Gardner: | Alright. |
| 3 | James: | Cause I got appointment at eleven o'clock so I'll be because I'm a stay down there |
| 4 | | that night cause uh um what was that uh mom died.  So I'll come down there I'll |
| 5 | | be down there uh uh Thursday.  I got an appointment at eleven o'clock to go have |
| 6 | | my car detailed. |
| 7 | Gardner: | Okay well shit, whatever, **like I said, whatever it was that the money was** |
| 8 | | **going to be I already going to have that.  Pops going to already have that, he** |
| 9 | | **already going to have that**. |
| 10 | James: | Give you a holler . . . alright? |
| 11 | Gardner: | Alright. |
| 12 | James: | Alright, alright. |

(Emphasis added).

Obviously, defendant already the money available to purchase the home and was simply going to try to convince Mr. James to put the home in his name so that defendant could have one more untraceable asset that he purchased from his drug trafficking proceeds.  Worse yet, despite the opportunity given to defendant to demonstrate his contrition and financial status, he has lied to this Court.


DATED: October 5, 2011                    Respectfully submitted,

MELINDA HAAG
United States Attorney


_____/s/_____
GARTH HIRE
Assistant United States Attorney


UNITED STATES' SECOND SUPPLEMENTAL
SENTENCING MEMORANDUM                4