IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 09-cr-00203-1 CW |
|---|---|
| Plaintiff, | ORDER GRANTING MOTIONS FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(B) AND 18 U.S.C. § 3582(c)(1)(A)(i) |
| v. | |
| DESEAN NATHANIEL GARDNER, | |
| Defendant. | (Dkt. Nos. 1753, 1765) |

Now before the Court are Defendant Desean Nathaniel Gardner's motions for a reduction of his sentence of imprisonment of 235 months to time served, or 137 months, pursuant to 18 U.S.C. § 3582(c)(1)(B) and Section 404 of the First Step Act of 2018, Docket No. 1753, and 18 U.S.C. § 3582(c)(1)(A)(i), Docket No. 1765. The government opposes the motions. Docket Nos. 1763, 1782. Having considered the entire record in this case, and the parties' submissions, the Court GRANTS the motions.

BACKGROUND

On April 8, 2009, Gardner was indicted on one count of conspiracy to manufacture, distribute, and possess with intent to distribute fifty grams or more of a mixture containing crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(iii) (Count One); and six counts of distribution of fifty grams or more of a mixture containing crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) (Counts

Two through Seven). Second Superseding Indictment at 116-20, Docket No. 161. At the time of the operative indictment, each of these offenses carried a mandatory minimum sentence of imprisonment of ten years based on the charged drug quantity of fifty grams or more of crack cocaine. Id.

On March 16, 2011, Gardner pleaded guilty, pursuant to a plea agreement under Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B) to conspiracy to manufacture, distribute, and possess with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(iii). Plea Agreement at 1-2, Docket No. 1086; Minutes of Plea Hearing, Docket No. 1092. The parties agreed that Gardner had been charged with an offense that involves "fifty grams or more" of crack cocaine, and that the mandatory minimum sentence of imprisonment for this offense was ten years and the maximum was life. Plea Agreement at 1-2.

In the plea agreement, Gardner admitted that, while he was on probation for prior offenses, and during the conspiracy, which began on or about March 18, 2008, and continued to March 7, 2009, he distributed more than five kilograms of crack cocaine and he was the organizer or leader of the conspiracy. Id. at 2-5. Gardner also admitted that he had a prior 1998 state felony conviction for possession of marijuana for sale, for which he was sentenced to sixteen months of imprisonment, and a prior 2001 state felony conviction for possession of crack cocaine for sale, for which he was sentenced to three years of imprisonment. Id. at 5-7.

The parties agreed that Gardner's base offense level was thirty-six under United States Sentencing Guideline (USSG) § 2D1.1(c)(2) based on the quantity of crack cocaine involved in the offense; that Gardner was subject to a four-level enhancement under USSG § 3B1.1(a), because he was an organizer or leader of criminal activity, for an offense level of forty; that Gardner was eligible for a three-level reduction for acceptance of responsibility; that Gardner's adjusted offense level was 37; and that Gardner qualified as a career offender under USSG § 4B1.1(a) in light of his prior convictions and that his criminal history category was VI. Id. ¶ 7. Gardner reserved the right to argue for a below-Guidelines sentence under 18 U.S.C. § 3553(a). Id.

The Probation Office agreed with the parties' offense level and criminal history category calculations and determined that Gardner's Guidelines range was 360 months to life, and it recommended a sentence of 220 months. PSR ¶¶ 21-32, 46, 108.

On October 5, 2011, after holding two hearings, the Court sentenced Gardner to 235 months of imprisonment, five years of supervised release, a $20,000 fine, and a $100 special assessment. Judgment, Docket No. 1183. The Court exercised its discretion to vary downward from the applicable Guidelines range of 360 months to life based on the non-career-offender Guidelines range for powder cocaine, which was 235 to 293 months. Sentencing Hearing Tr. at 20-21, Docket No. 1574.

Gardner has served 137 months of actual custody time and is currently serving his sentence at FCI Mendota. Gardner's estimated release date is November 12, 2025. Gardner has had no disciplinary incidents while in prison. Carmen Smarandoiu Decl.,

3

Ex. A at 1-3.  He has taken more than thirty-five classes, including ones providing vocational training in warehousing and the culinary arts.  Id.  Gardner is currently enrolled in several classes and is working toward a business degree.  Id.  While in prison, Gardner has been employed in maintenance, and he has maintained strong connections with his wife of more than ten years, his children, and other family members.  Id., Ex. C-F.

On September 4, 2020, Gardner moved for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(B) on the basis of Section 404 of the First Step Act of 2018, which he argues allows him to move to modify his sentence as if the Fair Sentencing Act's lowered penalties for crack-cocaine offenses had been in effect at the time he committed the crack-cocaine offense of which he was convicted.  On October 7, 2020, he also moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that he suffers from asthma and that this constitutes an extraordinary and compelling reason that warrants reducing his sentence because it makes him susceptible to developing serious complications from Covid-19.

Gardner's post-release plan is to live at the Fremont, California, townhouse where his wife, Malika Daniels Gardner, and their sixteen-year-old daughter, reside.  The Probation Office reports that Malika Daniels Gardner's "home is both suitable and appropriate" as a post-release location.  Probation Report of Oct. 22, 2020, at 2.  The Probation Office recommends that the Court leave Gardner's conditions of supervised release unchanged in the event that the Court orders his immediate release from

4

prison. Id. at 3. The Probation Office does not recommend location monitoring. Id.

The Probation Office represents that the availability of placements at local Residential Reentry Centers (RRC) changes daily, and that, because of waitlists, a bed could become available at the San Francisco RRC sometime in December 2020, while a bed could become available at the Oakland RRC in early 2021. Id. at 1.

## LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(B), a court may modify a defendant's sentence of imprisonment to the extent permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence, in relevant part, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Upon such a motion, a court may reduce a defendant's sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" Id. § 3582(c)(1)(A)(i).

The relevant Sentencing Commission policy statement sets forth several "extraordinary and compelling reasons." USSG §

5

1B1.13(1)(A) & cmt. 1.2. One of these reasons applies if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. § 1B1.13 cmt. 1(A)(ii). The Commission also requires that the defendant not pose a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g). Id. § 1B1.13(2). The factors that a court must consider to determine whether the defendant would pose a danger to another person or the community include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## ANALYSIS

I. Gardner's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(B) on the basis of Section 404 of the First Step Act

The Court first considers whether Gardner is eligible to seek a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(B) on the basis of Section 404 of the First Step Act of 2018. The Court concludes that he is.

The Fair Sentencing Act of 2010, 124 Stat. 2372, which took effect on August 3, 2010, enacted "more lenient mandatory minimum provisions" for convictions for possession of cocaine base. Dorsey v. United States, 567 U.S. 260, 264 (2012). "The [Fair Sentencing] Act increased the drug amounts triggering mandatory

6

minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum (while leaving powder at 500 grams and 5,000 grams respectively). The change had the effect of lowering the 100-to-1 crack-to-powder ratio to 18-to-1." Id. at 269 (internal citations omitted). This change is reflected in Section 2 of the Fair Sentencing Act. See 124 Stat. 2372 § 2. "The [Fair Sentencing] Act also eliminated the 5-year mandatory minimum for simple possession of crack." Dorsey, 567 U.S. at 269. This change is reflected in Section 3 of the Fair Sentencing Act. 124 Stat. 2372 § 3.

In 2012, the Supreme Court held that the Fair Sentencing Act's provisions applied prospectively only, such that only offenders who were sentenced on or after the effective date of the Act, August 3, 2010, could benefit from the Act's more lenient penalties. Dorsey, 567 U.S. at 281.

Section 404 of the First Step Act of 2018 makes the Fair Sentencing Act's penalty reductions for crack cocaine retroactive, allowing offenders who were sentenced for a "covered offense" before August 3, 2010, to move to modify their sentence as if the Fair Sentencing Act had been in effect at the time the crack-cocaine offense was committed. See First Step Act § 404(a)-(b). A court, however, may not consider a motion for a reduction of sentence under Section 404 if the movant's sentence was previously imposed or reduced under the Fair Sentencing Act, or if the movant previously moved under Section 404 for a reduction of sentence and that motion was denied on the merits. See First Step Act § 404(c).

Here, the parties disagree as to whether Gardner was sentenced for a "covered offense" within the meaning of Section 404. Section 404 defines "covered offense" as a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404(a).

The government argues that Gardner was not sentenced for a "covered offense" within the meaning of Section 404. The government contends that the Court should interpret the definition of "covered offense" in Section 404 as conferring eligibility for a sentence reduction based on the drug quantity actually involved in the defendant's conduct, as opposed to the defendant's statutory offense. Based on this interpretation, the government argues that Gardner is not eligible for a sentence reduction under Section 404, because the drug quantity to which he admitted in the plea agreement was more than five kilograms of crack cocaine, which "far exceeds the new 280 gram crack cocaine mandatory minimum threshold established by the Fair Sentencing Act in 2010" for triggering a ten-year mandatory minimum sentence. Opp'n at 2, Docket No. 1763.

Gardner argues that the Court must interpret "covered offense" as conferring eligibility for a sentence reduction where the Fair Sentencing Act "modified" the statutory penalties for "a Federal criminal statute," which refers to the defendant's statutory offense, and not the defendant's actual conduct. Gardner contends that this interpretation is supported by precedential opinions by every appellate court that has examined

8

the meaning of "covered offense."

The Ninth Circuit has not addressed the question of whether the defendant's statutory offense or the defendant's actual conduct controls the determination of whether the defendant was sentenced for a "covered offense" within the meaning of Section 404. As the government acknowledges, however, several courts of appeals have "concluded that it is the statute under which a defendant was convicted, not the defendant's actual conduct, that determines whether a defendant was sentenced for a 'covered offense' within the meaning of Section 404(a)." United States v. Johnson, 961 F.3d 181, 187 (2d Cir. 2020) (collecting cases). In Johnson, the Second Circuit analyzed the text of the definition of "covered offense" using principles of statutory interpretation, namely the "nearest reasonable referent" canon and the "anti-surplusage" canon, and it concluded that "the phrase 'Federal criminal statute' is the antecedent of the limiting clause, 'the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act.'" Id. at 188-89. Accordingly, the Second Circuit reasoned that "it is a defendant's statutory offense, not his or her 'actual' conduct, that determines whether he has been sentenced for a 'covered offense' within the meaning of Section 404(a), and is consequently eligible for relief under Section 404(b)." Id. at 190.

The Court is persuaded by the reasoning in Johnson and concludes that "covered offense" pertains to the defendant's statutory offense, and not the defendant's actual conduct. Here, it is undisputed that Gardner was convicted of and sentenced for

9

violations of §§ 846, 841(a)(1), and 841(b)(1)(A)(iii). It also is undisputed that Section 2 of the Fair Sentencing Act modified the statutory penalties associated with a violation of those provisions by increasing § 841(b)(1)(A)(iii)'s quantity threshold from fifty grams to 280 grams. Section 2 thus modified the penalties for Gardner's statutory offense. Accordingly, Gardner is eligible to seek a reduction under Section 404. See Johnson, 961 F.3d at 182-83 (holding that a defendant who pleaded guilty to and was sentenced for conspiracy with intent to distribute fifty grams or more of crack cocaine in violation of §§ 846, 841(a)(1), and 841(b)(1)(A)(iii) was eligible to seek a reduction under Section 404 despite admitting in a plea agreement that his offenses involved at least 1.5 kilograms of crack cocaine).

Having concluded that Gardner is eligible to seek a reduction of his sentence under Section 404, the Court now turns to the question of whether his request for a reduction of his sentence of imprisonment from 235 months to 137 months, which he has served, is well-taken.

The First Step Act permits a defendant who was sentenced for a crack cocaine offense to move the court to "impose a reduced sentence as if the Fair Sentencing Act had been in effect at the time the defendant committed the offense, and it gives the district court discretion to do so." United States v. Kelley, 962 F.3d 470, 472 (9th Cir. 2020) (internal quotation marks omitted). The First Step Act "does not permit a plenary resentencing." Id. at 477.

A district court that decides to exercise its discretion under the First Step Act must follow this two-step framework

10

(Kelley framework): "(1) place itself in the counterfactual situation where all the applicable laws that existed at the time the covered offense was committed are in place, making only the changes required by sections 2 and 3 of the Fair Sentencing Act; and (2) determine the appropriate sentence under this counterfactual legal regime." Id. at 475.

At the first step of the Kelley framework, a district court must "consider the state of the law at the time the defendant committed the offense, and change only one variable: the addition of sections 2 and 3 of the Fair Sentencing Act as part of the legal landscape." Id. "Because the First Step Act asks the court to consider a counterfactual situation where only a single variable is altered, it does not authorize the district court to consider other legal changes that may have occurred after the defendant committed the offense." Id.

Here, the parties agree that, if the Fair Sentencing Act had been part of the legal landscape at the time that Gardner committed the offense in question, the applicable Guidelines range would have been 360 months to life, which is the same Guidelines range that applied at the time of his sentencing. Motion at 11, Docket No. 1753; Opp'n at 8, Docket No. 1763.

At step two of the Kelley framework, the court may consider the § 3553(a) factors in imposing an appropriate sentence. See Kelley, 962 F.3d at 474, 479 (affirming district court's reduction of a sentence of imprisonment under Section 404 based on its consideration of the § 3553(a) factors at step two).

Gardner argues that the § 3553(a) factors warrant reducing his sentence to time served, or 137 months, because (1) at the

11

time he was sentenced, the Court exercised its discretion to vary downward from the applicable Guidelines range of 360 months to life to impose a sentence at the low-end of the non-career-offender Guidelines range for powder cocaine, which at the time was 235 to 293 months but today would be 188 to 235 months; (2) his sentence of 235 months is more punitive than necessary in light of the post-Fair Sentencing Act statutory range of five to forty years; and (3) his post-sentencing conduct has been exemplary, he has a strong family support network to assist his transition back into society, and he has a job waiting for him in construction.

The Court will consider the § 3553(a) factors in imposing an appropriate sentence at step two of the Kelley framework. The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment for the offense, afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the sentences and ranges established by the Sentencing Guidelines; (5) relevant policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

The Court finds and concludes that Gardner's current sentence of 235 months, although lower than the applicable post-

Fair Sentencing Act Guidelines range of 360 months to life, is greater than necessary to serve the objectives of sentencing. The Court further finds and concludes that a sentence of 137 months, which Gardner has already served, is appropriate based on the § 3553(a) factors.  This sentence is more than twice the post-Fair Sentencing Act's statutory minimum of five years for an offense involving fifty grams or more of crack cocaine, and it is sufficient to provide just punishment for the offenses of which Gardner was convicted, afford adequate deterrence, and protect the public.  As the Probation Office notes in its report, Gardner has "no convictions for violent related conduct and his most serious convictions are related to selling or distributing narcotics, specifically cocaine base and marijuana."  Probation Report dated Oct. 13, 2020.  Further, while in custody, Gardner has had no disciplinary incidents and has devoted himself to educating and rehabilitating himself.  Gardner's exemplary behavior and educational achievements while in prison suggest that he is committed to taking his life in a different direction upon his release, and that he is equipped with skills that will allow him to obtain employment and become a productive member of society upon his release.  The Court finds based on these facts that Gardner would not pose a danger to the community if released.  The Court also takes into account the great hardships that Gardner experienced in his formative years, see Sentencing Memorandum at 1-7, Docket No. 1154, and his representations during the sentencing proceedings in 2011 that he had engaged in criminal conduct because he had lost his job and had concluded that he had no other way to provide for his family, Sentencing

13

Hearing Tr. at 32. The Court is also guided, as it was during the sentencing proceedings in 2011, by the powder-cocaine, non-career-offender Guidelines range, which Gardner and Probation represent, and the government does not dispute, would be 188 to 235 months of imprisonment if Gardner were sentenced today. Motion at 13-14; Probation Report dated Oct. 13, 2020; see also Kimbrough v. United States, 552 U.S. 85, 101-02 (2007) (reaffirming the principles that sentencing courts "may vary [from Guidelines ranges] based solely on policy considerations, including disagreement with the Guidelines" and holding that a district court's downward variance from the applicable Guidelines range based on a policy disagreement with the Guidelines' disparate treatment of crack and powder cocaine offenses was not an abuse of discretion) (citations omitted).

The government does not dispute that the Court has discretion to consider the § 3553(a) factors at the second step of the Kelley framework and to impose a sentence of time served based on them. The government argues that the Court should decline to exercise its discretion to reduce Gardner's sentence at the second step of the Kelly framework because (1) his original sentence of 235 months was "substantially below" the applicable Guidelines range at the time of sentencing of 360 months to life, Opp'n at 2; (2) if Gardner were sentenced today, he would be subject to the same Guidelines range that was applicable at the time of sentencing; (3) the § 3553(a) factors do not support a reduction of his sentence because of his criminal history and the fact that his probation was revoked several times in the past; and (4) Gardner is not the "type of

14

1 offender that Congress intended to benefit from the Fair
2 Sentencing Act or First Step Act," as he admitted to distributing
3 more than five kilograms of crack cocaine and to being the leader
4 of the conspiracy, id. at 8.

5 The Court rejects the first three of the government's
6 arguments based on its analysis of the § 3553(a) factors, above.
7 The Court is not persuaded by the government's fourth argument
8 that Congress did not intend Section 404 to benefit defendants
9 who, like Gardner, admitted to distributing significant
10 quantities of crack cocaine and to serving as leaders of a
11 conspiracy, because that contention is unsupported. If Congress
12 had intended to preclude defendants with these characteristics
13 from obtaining reductions under Section 404, Congress could have
14 said so in the text of Section 404. It did not.

15 In light of the foregoing, the Court will reduce Gardner's
16 sentence of imprisonment from 235 months to 137 months, which he
17 has served. See Kelley, 962 F.3d at 474, 479 (affirming district
18 court's imposition of a reduced sentence of 180 months, where the
19 Fair Sentencing Act's revised Guidelines range was 188 to 235
20 months, based on its consideration of the § 3553(a) factors,
21 including defendant's "evidence that she had been a model inmate
22 during her incarceration").

23 II. Gardner's motion for a reduction of his sentence pursuant to
       18 U.S.C. § 3582(c)(1)(A)(i)
24

25 In the alternative, Gardner moves for a reduction of his
26 sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)
27 on the ground that he suffers from asthma and is therefore at
28

risk of developing serious complications if he were to contract Covid-19.

Gardner's motion is well-taken.  First, the combination of Gardner's asthma, and the risk that he could develop serious complications from Covid-19 in light of this preexisting condition that would prevent him from providing self-care while at FCI Mendota, presents an extraordinary and compelling reason for reducing his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). See USSG § 1B1.13 cmt. 1(A)(ii) (providing that an extraordinary and compelling reason for granting relief under § 3582(c)(1)(A)(i) exists if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover").  Second, for the reasons discussed in more detail above, the Court finds that the § 3553(a) factors weigh in favor of reducing Gardner's sentence of imprisonment to 137 months, and that Gardner would not pose a danger to the safety of any other person or the community if he were released from custody.

The government opposes Gardner's motion for compassionate release on three grounds, none of which is persuasive.

First, the government argues that Gardner has not exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A) because he has not shown that the warden at FCI Mendota received his request for compassionate release.  Opp'n at 9-10, Docket No. 1782.

16

1 "A growing chorus of courts around this country has found
2 section 3582's exhaustion provision is not a jurisdictional bar,
3 but rather a claim-processing rule subject to exceptions which
4 can and should be made under present circumstances [created by
5 the Covid-19 pandemic]." United States v. Connell, No. 18-CR-
6 00281-RS-1, 2020 WL 2315858, at *5 (N.D. Cal. May 8, 2020)
7 (collecting cases). These courts have recognized that "[t]he BOP
8 is overwhelmed by the unique challenges COVID-19 presents within
9 correctional institutions and may simply not have the capacity to
10 process compassionate release requests at the moment" and, as a
11 result, they have concluded that "[t]he extraordinary and
12 unprecedented circumstances faced by prisons in light of the
13 COVID-19 pandemic have rendered administrative exhaustion
14 futile." Id.

15 The Court finds the reasoning of these courts to be
16 persuasive and adopts it here to find and conclude that Gardner
17 is not barred from seeking a reduction of his sentence under 18
18 U.S.C. § 3582(c)(1)(A)(i) on the basis that he has not submitted
19 evidence showing that the Warden at FCI Mendota received his
20 request for compassionate release. Gardner's counsel represents
21 that Gardner filed a request for compassionate release with
22 Michel Lejeune, the then-acting warden of FCI Mendota, on July 1,
23 2020, but Gardner never received a response. Jerome Matthews
24 Decl. ¶¶ 1-4, Docket No. 1783-1. Gardner's case manager, who
25 helped Gardner submit the request, informed him that a number of
26 administrative requests sent to the warden at FCI Mendota had
27 gone unanswered because several people have held the position of
28 warden at FCI Mendota this year. Id. ¶¶ 3-4. In light of these

17

representations, which the government does not dispute, the Court finds and concludes that Gardner has substantially complied with the claim-processing provisions of § 3582(c)(1)(A), and that his failure to submit evidence showing that the warden at FCI Mendota received his request for compassionate release does not preclude the Court from considering his motion or granting him relief under § 3582(c)(1)(A)(i).

Second, the government contends that no extraordinary and compelling reason exists for reducing Gardner's sentence, because he does not suffer from moderate to severe asthma, Opp'n at 18-20, Docket No. 1782, and because the Bureau of Prisons (BOP) has taken "significant measures" to prevent the spread of Covid-19 at BOP institutions, id. at 20-21. This argument is unavailing. Gardner represents that he suffers from moderate asthma, Motion at 5-6, Docket No. 1765, and his medical records appear to support that representation, see Jerome Matthews Decl., Ex. A (medical records). The CDC's website states that moderate to severe asthma increases a person's risk of developing very serious complications from Covid-19.[1] Further, at present, there are three active inmate Covid-19 infections and one active staff Covid-19 infection at FCI Mendota[2], and eighty-six inmates at FCI Mendota have tested positive for Covid-19[3], suggesting that Gardner and other inmates at that institution could be at risk of

---

[1] See Centers for Disease Control and Prevention, People with Moderate to Severe Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last accessed Nov. 7, 2020).
[2] See Federal Bureau of Prisons, Covid-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed Nov. 4, 2020).
[3] See Federal Bureau of Prisons, Covid-19 Test Information, https://www.bop.gov/coronavirus/ (last accessed Nov. 7, 2020).

18

contracting Covid-19 notwithstanding the BOP's efforts to contain the spread of the virus. These facts are sufficient to conclude that an extraordinary and compelling reason exists for reducing Gardner's sentence under 18 U.S.C. § 3582(a)(1)(A)(i). See United States v. Fowler, 445 F. Supp. 3d 452, 454 (N.D. Cal. 2020) (Chhabria, J.) (granting motion for compassionate release on the grounds that the defendant suffers from asthma and that the defendant could "potentially suffer severe symptoms due to her personal health characteristics" if she were to contract Covid-19 while in custody).

Third, the government argues that the § 3553(a) factors do not weigh in favor of granting Gardner's motion and that he would pose a danger to the community if released in light of his criminal history. The Court rejects this argument for the reasons discussed in more detail in the preceding section of this order.

In light of the foregoing, the Court will reduce Gardner's sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) from 235 months to 137 months, which he has served.

## CONCLUSION

The Court GRANTS Gardner's motions for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(B) and 18 U.S.C. § 3582(c)(1)(A)(i). The Court reduces his sentence of imprisonment as to Count One from 235 months to 137 months, which he has served. All other aspects of his sentence remained unchanged.

Upon release, Gardner shall serve five years of supervised release as to Count One, subject to the conditions stated in the

Judgment, Docket No. 1183.  Upon release, he shall reside at his wife's home under self-quarantine for the first fourteen days and under home detention for the first six months, leaving the home only for work and medical care activities approved by the Probation Office.

The Court orders Gardner's release from FCI Mendota within two days of the date this order is filed, or as soon thereafter as his counsel confirms that he has arranged for transportation from the prison to his wife's home in a private car.

IT IS SO ORDERED.

Dated: November 9, 2020

CLAUDIA WILKEN
United States District Judge